**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

NORIANNIS EGLIANY PENA )
REBOLLEDO, )
)
Petitioner, )
)
v. )   Case No. CIV-26-959-SLP
)
FRED FIGUEROA, et al., )
)
Respondents. )

<u>REPORT AND RECOMMENDATION</u>

Petitioner Noriannis Egliany Pena Rebolledo, a noncitizen[1] and Venezuelan national proceeding with counsel, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 her detention by U.S. Immigration and Customs Enforcement ("ICE"). United States Chief District Judge Scott L. Palk referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. The undersigned set an expedited briefing schedule, Doc. 6, and the Petition is at issue. For the reasons set forth below, the undersigned recommends that the Court grant the Petition, Doc. 1, for habeas relief by ordering Respondents to release Petitioner subject to the conditions of her prior parole.

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I.    <u>Background</u>

Petitioner, a citizen of Venezuela, entered the United States on January 14, 2025, at San Ysidro, California, and applied for admission.  Pet. at 9; Resp. at 2; Doc. 8-1 at 1 (Notice to Appear).  Also on January 14, 2025, ICE formally placed Petitioner into removal proceedings before the Immigration Court through the issuance of a Notice to Appear, and charged her with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i) as someone not in possession of valid entry documents.  Resp. at 2-3; Doc. 8-1 at 1, 4.  On the same day, Petitioner was granted humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5) and released from ICE custody.  Pet. at 9; Resp. at 2-3, 5.  Her parole was valid until April 18, 2025. Pet. at 10; Doc. 1-2 (Petitioner's Admission Record); Resp. at 3, 5.  Petitioner alleges she complied with all reporting requirements and attended routine ICE check-in appointments as required.  Pet. at 10.

On January 21, 2026, ICE re-detained Petitioner while voluntarily appearing for a scheduled ICE check-in appointment.  Pet. at 10; Resp. at 3; Doc. 8-4 (Petitioner's Warrant for Arrest).  Respondents contend Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1). Resp. at 2.

On April 14, 2026, Petitioner filed an Application for Asylum and for Withholding of Removal.  *Id.* at 3; Doc. 8-2 (Petitioner's Asylum Application).  On May 6, 2026, an Immigration Judge ("IJ") denied Petitioner's asylum application and ordered her removed. Resp. at 3; Doc. 8-5 (IJ Order).  However, on June 3, 2026, Petitioner appealed the removal order to the Board of Immigration Appeals.  *See* EOIR, Automated Case Information, *at*

https://acis.eoir.justice.gov/en/ (last accessed June 30, 2026).  Therefore, the removal order is not yet final under 8 C.F.R. § 1241.1.

When Petitioner filed her Petition, she was detained at Diamondback Correctional Facility in Watonga, Oklahoma.  Pet. at 2; Doc. 1-1 at 1 (ICE Locator at the time of filing). She remains detained there.  *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited June 30, 2026).

## II.     <u>Petitioner's Claims</u>

Petitioner asserts two counts in her Petition.

- **Count I: Violation of the Due Process Clause.**  Petitioner alleges her re-detention without an opportunity for custody review or any meaningful opportunity to be heard deprived her of her protected liberty interest and violates her due process rights.  Pet. at 10-12.

- **Count II: Violation of the Immigration and Nationality Act ("INA").**  Petitioner alleges her detention under § 1225(b)(2) violates the INA because that provision does not apply to noncitizens who, like her, were paroled into the country and later re-detained.  Pet. at 12.

She asks the Court to "issue a Writ of Habeas Corpus requiring that Respondents release Petitioner immediately, without additional alternatives to detention."  *Id.*  Petitioner also seeks an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA"). *Id.* at 13.[2]

---

[2] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, she must seek those separately after a final judgment.  28 U.S.C. § 2412(d)(1)(B).  Thus, the Court need not address this request at this juncture.

### III.    Standard of Review

To obtain habeas corpus relief, Petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

### IV.    Analysis

#### A.    Petitioner's re-detention violated ICE regulations.

First, the Court must determine what regulations govern Petitioner's parole—and its subsequent revocation—under 8 U.S.C § 1182.  Individuals conditionally released from detention have a protected interest in their "continued liberty."  *Young v. Harper*, 520 U.S. 143, 147 (1997).  "This is true even when the released individual is subject to extensive conditions of release."  *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025).  When the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations."  *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265, 268 (1954).  Pertinent here, "the statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to detainees."  *Villanueva*, 801 F. Supp. 3d at 698-99 (citation modified).

Petitioner presented herself for inspection at the border in January 2025, and immigration officials subsequently paroled her into the United States under 8 U.S.C. § 1182(d)(5).  Pet. at 5; Resp. at 5.  This section grants discretion to DHS officials to "parole into the United States temporarily under such conditions as [the DHS Secretary]

4

may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Humanitarian parole may be terminated in two ways. First, parole terminates automatically if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). With automatic termination of parole, no written notice is required. *Id.* Second, if parole is not terminated automatically, revocation of parole must be based on a decision by a DHS official that either "the purpose for which parole was authorized" has been accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.* § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating the DHS Secretary may revoke parole "when the purposes of such parole . . . have been served"). And, in this case, parole will only be terminated when "written notice" of this decision is served on the noncitizen. 8 C.F.R. § 212.5(e)(2)(i).

Whether automatic or on notice, once a noncitizen's parole has been terminated, implementing regulations require that "any order of exclusion, deportation, or removal previously entered shall be executed." *Id.* "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." *Id.* Accordingly, unless detention is required for the timely removal of a noncitizen, continued detention following earlier release on parole must be supported by an individualized assessment by an authorized DHS official. Otherwise, implementing regulations require that a noncitizen be released again

5

to humanitarian parole. *See, e.g., Erwin M.L. v. Warden of the Mesa Verde ICE Processing Ctr.*, No. 26-CV-01049, 2026 WL 1256421, at *4 (E.D. Cal. May 7, 2026) ("The parole scheme . . . requires parole to continue after expiration unless there is an executable final order of removal or an individualized determination justifying a parolee's detention."); *Caisa Telenchana v. Hermosillo*, No. 26-CV-363, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026) ("The applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply.") (citation modified).

Respondents argue 8 U.S.C. § 1225(b)(1) governs Petitioner's detention because she presented herself at the border and was released on parole, meaning she never "entered" the country. Resp. at 4-7.[3] However, Respondents fail to meaningfully address Petitioner's allegations that they revoked her parole without an opportunity for custody review or any meaningful opportunity to be heard. Further, contrary to Respondents' assertions, *id*. at 7, expiration of Petitioner's parole does not justify her re-detention because her continued detention following earlier release on parole, even when expired, must be supported by an

---

[3] While Respondents allege Petitioner remains subject to § 1225(b) after she was released on parole and more than six months after that parole expired, this Court has held otherwise. *See, e.g., Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2 (W.D. Okla. May 26, 2026). To the extent Respondents rely on *Baca-Prieto v. Guigni*, 95 F.3d 1006, 1011 (10th Cir. 1996), that case is distinguishable and "does not render Petitioner subject to detention under § 1225(b)(1)." *Drozdov*, 2026 WL 1470929, at *2.

individualized assessment by an authorized DHS official.  *See Abdurakhmonov v. Grant*, No. CIV-26-277-SLP, 2026 WL 1166459, at *3 (W.D. Okla. Apr. 29, 2026) (R&R) (concluding respondents "cannot rely on the automatic termination cause to justify Petitioner's parole revocation," and recommending release subject to the conditions of petitioner's earlier parole); *see also Arce Padilla v. Mullin*, No. 26-CV-270, 2026 WL 1245462, at *4 (D. Nev. May 6, 2026) ("Here, DHS's failure to detain [petitioner] upon the expiration of her parole effectively continued [petitioner's] parole status.").  This is especially true in circumstances, like here, where Petitioner was detained while voluntarily attending a regularly scheduled ICE check-in appointment on January 21, 2026—more than six months after her parole initially expired.  *See* Pet. at 10.[4]

Based on the record evidence, Respondents violated their own regulations when they revoked Petitioner's parole without notice of a reasoned decision for the revocation. *See, e.g.*, *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 418 (S.D.N.Y. 2025) ("Respondents provide no indication that an individualized determination was made as to the revocation of [petitioner's] parole; nor do they articulate, even now, either that the purpose for which [petitioner's] parole was authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants her continued presence in the United States."); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1137-38 (D. Or. 2025) ("This

---

[4] The undersigned is not persuaded by Respondents' citation to *Board of County Commissioners of County of Adams v. Isaac*, 18 F.3d 1492, 1499 (10th Cir. 1994) for the proposition that "mere delay or inaction is insufficient to give rise to a claim of estoppel against the government," Resp. at 5 n.4, as that case is factually and procedurally distinguishable.

is a grant of discretionary authority, but it has a mandatory requirement—parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").

**B.    Respondents violated Petitioner's due process by improperly revoking her parole.**

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  It applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.  In the civil immigration detention context, courts consistently apply the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, (1976), to evaluate the level of process owed a noncitizen.[5]  *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021) (applying *Mathews* to due process challenges to prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same).

The *Mathews* test includes three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

---

[5] Respondents rely on *Demore v. Kim*, 538 U.S. 510 (2003) to contend "mandatory detention pending removal proceedings does not violate due process."  Resp. at 8.  The Supreme Court in *Demore*, though, did not create a blanket rule permitting detention of noncitizens without individualized review and left open the question whether detention violates due process.  *See Merchan-Pacheo v. Noem*, No. 25-CV-03860, 2026 WL 88526, at *4-6 (D. Colo. Jan. 12, 2026) (concluding *Demore* "created a framework that *permits* Petitioner's release" and "in no way suggests that the court should decline to consider the *Mathews* factors").

safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Petitioner has a strong liberty interest in being free from physical detention. This is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause, commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation modified). "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), but that power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695. "When the government grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sep. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "noncitizens acquire a liberty interest once released from

9

immigration detention").[6]   Upon re-detention, Respondents deprived Petitioner of her protected status when they revoked her parole and placed her in custody.

All three *Mathews* factors weigh in favor of Petitioner.   First, Petitioner has a significant private interest in remaining free from detention after spending years on parole. She was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) in January 2025.  Pet. at 5, 10.  During this time, her interest in release grew even stronger as she worked and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.  Further, "Petitioner's liberty interest does not evaporate when a term of parole expires." *Juan Carlos V.B. v. Chestmut*, No. 26-CV-03077, 2026 WL 1224238, at *2 (E.D. Cal. May 5, 2026); *see also Begaliev v. Warden of Otero Cnty. Processing Ctr.*, No. 26-CV-00358, 2026 WL 837109, at *5 (D.N.M. Mar. 26, 2026) (finding a similarly situated petitioner "had a sufficient liberty interest created by the regulations").  Accordingly, the first *Mathews* factor favors Petitioner.

Second, the risk of an erroneous deprivation of Petitioner's liberty interest is considerable where she has not received any notice of the reason for her parole revocation and simple procedures exist that would mitigate those risks.  "Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because

---

[6] The Due Process Clause does not provide noncitizens a liberty interest in being released on parole. *See Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001).   However, noncitizens are entitled to the process provided in a statute and/or regulations. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). And, as discussed, Petitioner was entitled to notice and an individualized termination under ICE's own regulations when her parole continued after its initial expiration. *See* 8 C.F.R. § 212.5(e).

opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at \*6 (E.D. Cal. Feb. 9, 2026) (R&R), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Petitioner received no procedural safeguards to determine whether the revocation of her parole and her detention were justified, and thus Respondents have detained her without any stated cause. This factor also weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court must consider the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. While "the government has an interest in enforcing immigration laws, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of her release is low." *Saqib*, 2026 WL 350830, at \*6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at \*3 (N.D. Cal. June 14, 2025) ("[T]he Court concludes that the government's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with her reporting requirements."); *Khudaev v. Blanche* No. 25-CV-01291, 2026 WL 1602029, at \*10 (D.N.M. June 4, 2026) (finding "Respondents' interest in detaining Petitioner would not be substantively hindered, fiscally or administratively, by simply providing Petitioner written notice"). And the undersigned can discern no significant administrative or fiscal burden associated with placing the burden on the government to follow its own regulations, especially given Petitioner's detention was not deemed

11

necessary for more than two years. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of her parole is only meaningful if the government comports with its own internal standards regarding parole revocation.").

Accordingly, Respondents' revocation of Petitioner's parole in violation of their own regulations violates her right to due process.

### C. The proper remedy is release.

Consistent with this Court's recent approach with a similarly situated petitioner, the undersigned recommends the Court order Petitioner's release subject to the conditions of her prior parole under § 1182(d)(5). *See Ewere v. Cerna*, No. CIV-26-320-SLP, 2026 WL 1207088, at *2 (W.D. Okla. May 4, 2026) (directing respondents "to immediately release Petitioner, subject to the conditions of her prior parole issued under 8 U.S.C. § 1182(d)(5)" and enjoining respondents "from re-detaining Petitioner unless, prior to such re-detention, Petitioner is provided with written notice and a pre-deprivation hearing before a neutral decision maker"); *see also Khudaev*, 2026 WL 1602029, at *10 (holding "the appropriate remedy is release" where petitioner's due process was violated when her § 1182 parole was improperly revoked).

### D. The Court should decline to address Petitioner's remaining claims.

Petitioner also alleges her continued detention without a bond hearing violates the INA. Pet. at 12. If the Court adopts the undersigned's recommendation that Petitioner be released because her due process rights were violated when Respondents improperly revoked her parole, the Court should decline to decide the merits of Petitioner's remaining claims because, at most, she would only be entitled to lesser relief in the form of a bond

12

hearing.  *Accord Singh v. Mullin*, No. CIV-26-601-SLP, 2026 WL 1661971, at *3 (W.D. Okla. June 9, 2026) (declining to decide the merits of a petitioner's additional due process claim when adopting the recommended relief of a bond hearing pursuant to § 1226(a)).

**V.      Recommendation and Notice of Right to Object**

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the Petition for habeas relief by ordering Respondents to release Petitioner subject to the conditions of her prior parole.  The parties are advised of their right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objection must be filed not later than **July 8, 2026**.  *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party wishes to respond to the other party's objections, such response must be filed not later than **July 13, 2026**.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 30th day of June, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

13